# TYLER *v.* JUDGES OF THE COURT OF REGISTRATION.

## ERROR TO THE SUPREME JUDICIAL COURT OF THE COMMONWEALTH OF MASSACHUSETTS.

No. 213.   Argued October 25, 1900.—Decided December 17, 1900.

A petitioner in an application for a writ of prohibition to the judges of a Court of Land Registration upon the ground that the contemplated proceedings in said court denied to parties interested due process of law, cannot maintain a writ of error from this court to the Supreme Court of the State without showing that he is personally interested in the litigation, and has been, or is likely to be, deprived of his property without due process of law.

The fact that other persons in whom he has no personal interest and who do not appear in the case, may suffer in that particular is not sufficient.

THIS was a petition by Tyler to the Supreme Judicial Court of Massachusetts for a writ of prohibition to be directed to the Judges of the Court of Registration to prohibit them from further proceeding under what is known as the Torrens Act in the registration of a certain parcel of land described in the application, or in the determination of the boundary between such parcel of land and land of petitioner.

The petition alleged in substance that David E. Gould and George H. Jones, on December 22, 1898, applied to the Court of Land Registration to have certain land in the county of Middlesex brought under the operation and provisions of the Land Registration Act, and to have their title thereto registered and confirmed. The land referred to was shown on a plan filed with the application. The petitioner, who was the owner of an estate in fee simple in a parcel of land adjoining part of the land described in the application insisted that the boundary line between his land and the part aforesaid was not correctly shown on the plan filed with the application, but encroached upon and included part of his land. The petition prayed for a writ of prohibition, and alleged that the Land Registration Act

under which the proceedings were taken violated the provisions of the Constitution of the United States, first, in making a decree of confirmation conclusive upon persons having an interest in the land, though they may have had no notice of the proceedings for registration, and therefore would have the effect of depriving such persons of their property without due process of law, and otherwise than by the law of the land; second, that the act was also invalid in giving judicial powers to the recorder and assistant recorders therein mentioned, who were not judicial officers under the constitution of the Commonwealth, and also in giving them power to deprive persons of their property without due process of law; third, that the operation of the act in other respects depended for the effect thereby intended upon the conclusiveness of the original decree of registration, and the exercise of nonjudicial powers by the recorder, etc.

Upon the petition and answer, which simply averred compliance with the terms of the act, together with the rules of the land court, etc., the case was reserved for a full bench upon the only question raised at the hearing, namely, the constitutionality of the act. The court decided the act to be constitutional, and dismissed the petition. 175 Mass. 71. Hence this writ of error.

*Mr. J. L. Thorndike,* for plaintiff in error.

*Mr. Hosea M. Knowlton,* for defendants in error.

MR. JUSTICE BROWN, after stating the case, delivered the opinion of the court.

The prime object of all litigation is to establish a right asserted by the plaintiff or to sustain a defence set up by the party pursued. Save in a few instances where, by statute or the settled practice of the courts, the plaintiff is permitted to sue for the benefit of another, he is bound to show an interest in the suit personal to himself, and even in a proceeding which he prosecutes for the benefit of the public, as, for example, in cases of nuisance, he must generally aver an injury peculiar to himself, as distinguished from the great body of his fellow citizens.

The very first general rule laid down by Chitty, Pleading, p. 1, is that " the action should be brought in the name of the party whose legal right has been affected, against the party who committed or caused the injury, or by or against his personal representative." An action on contract (p. 2) " must be brought in the name of the party in whom the legal interest in such contract was vested;" and an action of tort (p. 69) " in the name of the person whose legal right has been affected, and who is legally interested in the property at the time the injury thereto was committed." As stated by another writer: " No one can be a party to an action if he has no interest in it. A plaintiff cannot properly sue for wrongs that do not affect him, and on the other hand, a person is not properly made a defendant to a suit upon a cause of action in which he has no interest, and as to which no relief is sought against him." In familiar illustration of this rule, the plaintiff in an action of ejectment must recover upon the strength of his own title and not upon the weakness of the defendant's, who may even show title in a third person to defeat the action.

Actions instituted in this court by writ of error to a state court are no exceptions to this rule. In order that the validity of a state statute may be " drawn in question " under the second clause of section 709, Rev. Stat., it must appear that the plaintiff in error has a right to draw it in question by reason of an interest in the litigation which has suffered, or may suffer, by the decision of the state court in favor of the validity of the statute. This principle has been announced in so many cases in this court that it may not be considered an open question.

In *Owings* v. *Norwood's Lessee*, 5 Cranch, 344, an action of ejectment, defendant set up an outstanding title in one Scarth, a British subject, who held a mortgage upon the premises. The decision of the court being adverse to Owings, he sued out a a writ of error from this court, contending that Scarth's title was protected by the treaty with Great Britain. It was held that, as the defendant claimed no right under the treaty himself, and that the right of Scarth, if he had any, was not affected by the decision of the case, the court had no jurisdiction. " If," the court said, " he [the defendant] claims nothing under

a treaty, his title cannot be protected by the treaty. If Scarth or his heirs had claimed it would have been a case arising under a treaty. But neither the title of Scarth nor of any person claiming under him can be affected by the decision of this court."

In *Henderson* v. *Tennessee,* 10 How. 311, a similar case, namely, an action of ejectment, an outstanding title in a third person, was set up by the defendant, and alleged to have been derived under a treaty. The court held that an outstanding title in a third person might be set up, and that the title set up in this case was claimed under a treaty, "but," said the court, "to give jurisdiction to this court, the party must claim for himself, and not for a third person in whose title he has no interest. . . . The heirs of Miller," who claimed under the treaty, "appear to have no interest in this suit, nor can their rights be affected by the decision." Like rulings were made under a similar state of facts in *Montgomery* v. *Hernandez,* 12 Wheat. 129; *Hale* v. *Gaines,* 22 How. 144; *Verden* v. *Coleman,* 1 Black. 472; and *Long* v. *Converse,* 91 U. S. 105.

In *Giles* v. *Little,* 134 U. S. 645, the prior authorities are cited, and the law treated as well settled that "in order to give this court jurisdiction to review a judgment of a state court against a title or right set up or claimed under a statute of, or an authority exercised under, the United States, that title or right must be one of the plaintiff in error, and not of a third person only." See also *Ludeling* v. *Chaffe,* 143 U. S. 301.

It is true that under the third clause of section 709, where a title, right, privilege or immunity is claimed under Federal law, such title, etc., must be "specially set up or claimed," and that no such provision is made as to cases within the second clause, involving the constitutionality of state statutes or authorities, but it is none the less true that the authority of such statute must "be drawn in question" by some one who has been affected by the decision of a state court in favor of its validity, and that in this particular the three clauses of the section are practically identical.

As we had occasion to observe in *California* v. *San Pablo & Tulare Railroad,* 149 U. S. 308, 314, "the duty of this court, as of every judicial tribunal, is limited to determining rights of

persons or of property, which are actually controverted in the particular case before it. When, in determining such rights, it becomes necessary to give an opinion upon a question of law, that opinion may have weight as a precedent for future decisions. But the court is not empowered to decide moot questions or abstract propositions, or to declare, for the government of future cases, principles or rules of law which cannot affect the result as to the thing in issue in the case before it. No stipulation of parties, or counsel, whether in the case before the court, or in any other case, can enlarge the power or affect the duty of the court in this regard." See also *Lord* v. *Veazie,* 8 How. 251; *Cleveland* v. *Chamberlain,* 1 Black, 419; *Kimball* v. *Kimball,* 174 U. S. 158.

In the case under consideration the plaintiff in error is the owner of a lot adjoining the one which is sought to be registered, and the only question in dispute between them relates to the location of the boundary line. In his petition he does not set forth that he made himself a party to the proceedings before the Court of Registration, and his name does not even appear in the list of those who are required to be notified, or elsewhere in the proceedings before the court.

In the assignment of error he complains only of the unconstitutionality of the statute, in that it deprives persons of property without due process of law. In his brief his first objection to the validity of the act is that the registration, which deprives all persons, except the registered owner of interest in the land, is obtained as against residents and known persons only by posting notices in a conspicuous place on the land and by registered letters, and as against non-residents and unknown persons by publication in a newspaper; and that the rights of the parties may be foreclosed without actual notice to them in either case, and without actual knowledge of the proceedings. His second objection to the validity of the act is that the registration of dealings with the land after the original registration would, in certain cases, have the effect of depriving the registered owners of their property without due process of law.

His objections throughout assume that he has actual knowledge of the proceedings, and may make himself a party to them

and litigate the only question, namely, of boundaries, before the Court of Registration. In other words, he is not affected by the provisions of the act of which he complains, since he has the requisite notice. Other persons, whether residents or non-residents, whose rights might be injuriously affected by the decision, might lawfully complain of the unconstitutionality of an act which would deprive them of their property without notice; but it is difficult to see how the petitioner would be affected by it. Indeed, if the act were subsequently declared to be unconstitutional, the proceedings against him would simply go for naught. He would have lost nothing, since the action of the court would simply be void, and his interest in the land would remain unaffected by its action.

It is true that his competency to institute these proceedings does not seem to have been questioned by the Supreme Court of Massachusetts. It may well have been thought that to avoid the necessity and expense of appearing before an unconstitutional court and defending his rights there, he had sufficient interest to attack the law, which lay at the foundation of its proposed action; but to give him a *status* in this court he is bound under his petition to show, either that he has been, or is likely to be, deprived of his property without due process of law, in violation of the Fourteenth Amendment; and as no such showing has been made, we cannot assume to decide the general question whether the Commonwealth has established a court whose jurisdiction may, as to some other person, amount to a deprivation of property. If that court shall eventually uphold his contention with respect to the boundary, he will have no ground for complaint. If he be unsuccessful, he may, under the registration act, appeal to the Superior and ultimately to the Supreme Court, whence, if it be made to appear that a right has been denied him under the Fourteenth Amendment, he may have his writ of error from this court.

Our conclusion is that the plaintiff in error has not the requisite interest to draw in question the unconstitutionality of this act, and that the writ of error must be

*Dismissed.*

JUSTICES HARLAN, BREWER, SHIRAS and the CHIEF JUSTICE, dissenting.

MR. CHIEF JUSTICE FULLER, with whom concurred MR. JUSTICE HARLAN, MR. JUSTICE BREWER and MR. JUSTICE SHIRAS, dissenting.

In order to give this court jurisdiction to review the judgment of a state court on the ground that the validity of a statute of, or an authority exercised under, any State, was drawn in question for repugnancy to the Constitution or laws of the United States, and that its validity was sustained, it is enough that a definite issue as to the validity of the statute is distinctly deducible from the record; that the state court entertained the suit; and that its judgment rested on the conclusion that the statute was valid.

The inquiry is whether the validity of the statute or authority has been drawn in question " in a suit " in the state court and a " final judgment " has been rendered in favor of its validity. If so, we have jurisdiction to review that judgment. *Weston* v. *Charleston,* 2 Peters, 449; *Wheeling & Belmont Bridge Company* v. *Wheeling Bridge Company,* 138 U. S. 287; *Luxton* v. *Bridge Co.,* 147 U. S. 337; *McPherson* v. *Blacker,* 146 U. S. 1.

*Weston* v. *Charleston* was an application to the state court for a writ of prohibition to restrain the levy of a tax under a city ordinance on the ground that it violated the Constitution, and went to judgment in the highest court of South Carolina sustaining the validity of the ordinance.

This court held that the writ of error was properly issued, and Mr. Chief Justice Marshall said:

" The question, therefore, which was decided by the constitutional court, is the very question on which the revising power of this tribunal is to be exercised, and the only inquiry is, whether it has been decided in a case described in the section which authorizes the writ of error that has been awarded. Is a writ of prohibition a suit ? "

After answering this question in the affirmative the Chief Justice thus proceeded:

" We think also that it was a final judgment, in the sense in which that term is used in the 25th section of the judicial act. If it were applicable to those judgments and decrees only in

which the right was finally decided, and could never again be litigated between the parties, the provisions of the section would be confined within much narrower limits than the words import, or than Congress could have intended.

"Judgments in actions of ejectment, and decrees in chancery dismissing a bill without prejudice, however deeply they might affect rights protected by the Constitution, laws, or treaties of the United States, would not be subject to the revision of this court. A prohibition might issue, restraining a collector from collecting duties, and this court would not revise and correct the judgment. *The word 'final' must be understood in the section under consideration, as applying to all judgments and decrees which determine the particular cause.*"

*Wheeling and Belmont Bridge Company* v. *Wheeling Bridge Company* was a petition to condemn land, and it had been held by the Supreme Court of West Virginia that the right to condemn was to be determined before the amount of compensation to be made had been ascertained. The judgment of the inferior court sustained the proceedings to condemn and appointed commissioners, and the state Supreme Court entertained an appeal from that judgment and affirmed it.

A writ of error from this court was brought and a motion to dismiss it denied. Mr. Justice Field said:

"The judgment appears to have been considered by that court as so far final as to justify an appeal from it; and if the Supreme Court of a State holds a judgment of an inferior court of the State to be final, we can hardly consider it in any other light, in exercising our appellate jurisdiction."

In *Luxton* v. *Bridge Company*, which was a proceeding to condemn in a Circuit Court of the United States, we held that an order appointing commissioners to assess damages was not a final judgment. The case of the *Wheeling and Belmont Bridge Company* was cited and distinguished by Mr. Justice Gray, who said:

"Jurisdiction of a writ of error to the Supreme Court of Appeals of West Virginia, affirming an order appointing commissioners under a somewhat similar statute, was there entertained by this court, solely because that order had been held

by the highest court of the State to be an adjudication of the right to condemn the land, and to be a final judgment, on which a writ of error would lie, and could, therefore, hardly be considered in any other light by this court in the exercise of its jurisdiction to review the decisions of the highest court of the State upon a Federal question. 138 U. S. 287, 290. To have held otherwise might have wholly defeated the appellate jurisdiction of this court under the Constitution and laws of the United States; for if the highest court of the State held the order appointing commissioners to be final and conclusive unless appealed from, and the validity of the condemnation not to be open on a subsequent appeal from the award of damages, it is difficult to see how this court could have reached the question of the validity of the condemnation, except by writ of error to the order appointing commissioners."

It is true that it appeared in these cases that the interests of plaintiffs in error were directly affected, and it is held that such is not the case here. But that ruling in effect involves inquiry into the merits on a question of procedure, and it seems to me inadmissible for this court to deny, in a case like this, the competency of a party to invoke the jurisdiction of the state court, when that court has exercised it at his instance.

The Supreme Judicial Court of Massachusetts held that prohibition was the appropriate remedy to avert the injury with which petitioner alleged he was threatened, and that petitioner was entitled to make the application for the writ; and thereupon passed upon the question of the validity of the statute, and rendered a final judgment sustaining its validity. The unconstitutionality of the act was the sole ground on which the application for prohibition rested, and the determination of that Federal question determined the cause.

We have then "a suit" and a "final judgment" sustaining the validity of a state statute drawn in question for repugnancy to the Constitution.

Every element requisite to the maintenance of our jurisdiction exists, and I submit that we cannot decline to exercise it because of any supposed error on the part of the state court in respect of entertaining the suit.

To repeat: The state court ruled that the petition was sufficient to raise the Federal question; that petitioner was competent to raise it; and that he was entitled to preventive relief if his contention was well founded. And these rulings should be accepted on the preliminary inquiry into our jurisdiction.

The objections of plaintiff in error to the proceedings of the land court were not for want of jurisdiction over him personally, but for want of jurisdiction over the subject-matter. In other words, that there was a total want of power on the part of the persons assuming to act as a court to proceed at all. Whether that was so or not is the question which the state court decided, and discussion of that question is discussion on the merits.

Plaintiff in error alleged that the integrity of his boundary line was threatened by these proceedings. The fact that he had actual knowledge of them did not validate them if the act was void. And the answer to the question whether if he were deprived of some part of his real estate, or of the cost of litigation, such deprivation would be deprivation without due process of law, determines the constitutionality of the statute, by which that result was effected.

In my opinion the writ of error was providently issued, and I am authorized to state that MR. JUSTICE HARLAN, MR. JUSTICE BREWER and MR. JUSTICE SHIRAS concur in that conclusion.