### STATE OF NEW JERSEY v. PATRICK SUTTON, PROSECUTOR.

Argued June Term, 1912—Decided October 21, 1912.

1. The act of 1912 (*Pamph. L., p.* 235), requiring street railways to grant free transportation of uniformed public officers while engaged in the performance of their public duties and of detectives whose duties require police duty to be performed without uniform, is constitutional so far at least as relates to members of the police force.

2. Consideration of the constitutionality of an act of the legislature ought to be limited to the exact case presented.

3. Where a street railway is required to carry police officers without payment of fare, it is not strictly accurate to say that the com-

pany receives no compensation; there may be an indirect compensation in the protection afforded by the mere presence of the officer.

4. The legislature may reasonably think that the services of a police officer may be required at any time upon a street car to prevent violations of law, and may, in the exercise of the police power of the state, legalize his presence on the car without payment of fare.

.5. The constitutionality of legislation is not always to be tested by abstract reasoning. It depends in part at least upon the habits and customs of the community, and if a custom, existing when a corporation acquires its rights, is given the force of statutory law, the corporation loses nothing which it had either in possession or immediate anticipation at the time of its incorporation.

---

On *certiorari* bringing up conviction before a magistrate.

Before Justice SWAYZE, pursuant to the statute.

For the prosecutor, *William D. Edwards* (*Edwards & Smith*).

For the state, *Thomas G. Haight* (*Warren Dixon* on the brief).

The opinion of the court was delivered by

SWAYZE, J. The prosecutor was convicted of assault and battery upon a detective, a member of the police force of Jersey City, and justified upon the ground that the detective was lawfully ejected by the prosecutor acting as servant of the Public Service Railway Company, for refusal to pay fare. This defence was met by the act of 1912 (*Pamph. L., p.* 235), requiring street railways to grant free transportation of uniformed public officers while engaged in the performance of their public duties, and of detectives whose duties require police duty to be performed without uniform. No question is made that the detective was a public officer and came within the provisions of the act. Its constitutional validity is questioned because it is said to take the railroad company's property without compensation. No other point was argued. *Wilson* v. *United Traction Co.,* 76 *N. Y. Supp.* 203, is a

clear authority in favor of this contention. . The state re-
lies upon the decision of the Supreme Court of the United
States in *Interstate Consolidated Street Railway Co.* v. *Mas-
sachusetts*, 207 *U. S.* 79. That case, however, involved the
question of the right to require the transportation of school
children at less than cost—half fare—and not the question of
the right to require free transportation. The act now in
question requires the free transportation of all public officers
in uniform. It is not limited to members of the police force.
But as the present case involves only the class last named,
and so far as appears no other class of public officers will ever
claim its privileges to the injury of the company, considera-
tion of the constitutionality of the act ought to be limited
to the exact case presented. *Tyler* v. *Judges of the Court of
Registration*, 179 *U. S.* 405; *Smiley* v. *Kansas*, 196 *Id.* 447;
*Grenada Lumber Co.* v. *Mississippi*, 217 *Id.* 433; *Citizens
National Bank* v. *Kentucky, Id.* 443.

All I need decide is whether the requirement of free trans-
portation for members of the police force is within the
power of the legislature.

I ought to sustain the legislation if I can consistently with
the constitutional provisions. *Attorney-General* v. *McGuin-
ness*, 49 *Vroom* 346. Three considerations lead me to think
I can, notwithstanding the decision by the Appellate Division
in New York.

*First.* It is not strictly accurate to say that the company
receives no compensation for carrying police officers if they
pay no fare. It may well be that there is an indirect com-
pensation in the protection afforded by the mere presence of
the officer, against pickpockets, or even against assaults on
passengers by the company's own servants for which the
company would be liable (*Haver* v. *Central Railroad Com-
pany*, 33 *Vroom* 282), and in the help thus given to the
company in the performance of its duty to its passengers.
Indirect compensation of this character has been recognized
as compensation within the meaning of the constitution.
*Valentine* v. *Englewood*, 47 *Id.* 509, 518, which cites with

approval the remark of Justice Devens in *Miller* v. *Horton,* 152 *Mass.* 540.

*Second.* The statute of 1912 may fairly be regarded as an exercise of the police power of the state. Policemen are frequently required to be on street cars in the execution of their duties to preserve the peace, to enforce ordinances and to prevent or detect crime. It would be difficult to say that the mere presence of a police officer might not be of value for securing these objects, and it would be difficult if not impossible to distinguish in principle between his right, for example, to be on a crowded car to arrest pickpockets and his right to be on a car not crowded to enforce the ordinance against spitting. If he has the right to be there for these purposes it is impossible to say that his services may not at any time be required to prevent violations of law; at any rate, the legislature might reasonably think so, and legalize his presence on the car without payment of fare.

*Third.* The constitutionality of legislation is not always to be tested by abstract reasoning. It depends in part at least upon the habits and customs of the community. The Mill acts, authorizing dams by which the land of other owners are flowed (*Head* v. *Amoskeag Mfg. Co.,* 113 *U. S.* 9); the acts providing for drainage of swamp lands, at the expense in part of unwilling owners (*Wurts* v. *Hoagland,* 114 *Id.* 607); the taking of land for a levee in Louisiana (*Eldridge* v. *Trezevant,* 160 *Id.* 452); the irrigation of arid lands (*Fallbrook Irrigation District* v. *Bradley,* 164 *Id.* 112; *Clark* v. *Nash,* 198 *Id.* 361); the construction of an aerial bucket line across another man's land (*Strickley* v. *Highland Boy Mining Co.,* 200 *Id.* 527), are all instances of the extent to which the right of property may be modified by local customs or local needs, and justify the language of the United States Supreme Court in *Otis Co.* v. *Ludlow Co.,* 201 *Id.* 140 (at *p.* 154), that "even the incidents of ownership may be cut down by the peculiar laws and usages of a state." It is shown in this case that at the time of the incorporation of the defendant company, and for many years prior thereto, and subsequently until the Public Utilities act of 1910 (*Pamph. L., p.* 56) was

supposed to make the practice illegal, it had been the custom of the street railway companies to carry members of the police force free. The defendant company acquired its rights while that custom was in vogue, and if the custom is now given the force of statutory law, the company loses nothing which it had either in possession or immediate anticipation at the time of its incorporation. In that respect the case resembles Interstate Consolidated Street Railway Co. *v.* Massachusetts, in which, however, the requirement of a half fare rested upon an antecedent statute. The underlying principle, however, is the same. It was upon this ground that the majority of the court decided that case. Upon it I may rest my view that the act of 1912, as far as it applies to police officers, is valid. Further than that I need not go in this case. Assuming what was not questioned that they are public officers within the meaning of the act, the defendant had no right to eject the detective and the judgment must be affirmed.