Milkey, J.
(dissenting). The interveners claim that through many decades of open, adverse use, they obtained prescriptive easements in a particular beach area. That beach area did not exist at the time that the parcels now owned by the plaintiffs were registered. Nor has it since then, until now, been the subject of any supplemental registration proceeding. Nevertheless, the majority concludes that the beach area should be treated as if it automatically had become registered land as it was being formed.[1] Because that conclusion is unsupported by the language of the registration statute and inconsistent with the essential nature of registered land, I respectfully dissent.
As an initial matter, I note what makes registered land distinct from other property. Under the ordinary system in which title to land is memorialized, county registries of deeds serve as public repositories in which private deed transfers are recorded. In each such deed, the property at issue is typically described by means of a metes and bounds description. The validity of the title held by a person claiming ownership of a parcel of land can be tested and verified only by means of a search of prior registry records, following a chain of title to a source deed. As the Supreme Judicial Court has observed, the problem with the ordinary system of recording deeds is that “no one can be absolutely certain whether he is buying a good title or a bad one.” Kozdras v. Land/Vest Properties, Inc., 382 Mass. 34, 44 (1980), quoting from Hurd, Exposition of the Torrens System of Registration of Title, An Essay, in The Torrens System of Registration and Transfer of the Title to Real Estate 88-89 (Yeakle ed. 1894).[2]
*541 To get rid of that uncertainty and “all the expense, trouble and delay that attend running the title back through previous transfers,” the Legislature developed an alternative way of recording title. I hid.. quoting from Hurd, supra. Specifically, in 1898, the Legislature created a registration system based on one implemented in Australia by Sir Robert Torrens. St. 1898, c. 562. See McQuesten v. Commonwealth, 198 Mass. 172, 177 (1908). Under this alternative system, parcels are surveyed and plotted with precision on plans maintained by a specialized court (originally known as the Court of Registration, later renamed the Land Court). After a court-appointed title examiner conducts an extensive investigation into the title of the depicted tract, and appropriate notice is provided to potentially interested parties, the court holds an in rem proceeding to adjudicate title to the property.[3] That adjudication results in a certificate of title that establishes the rights of the world to that particular tract.[4] See Tyler v. Judges of the Court of Registration, 175 Mass. 71, 73-74, aff'd, 179 U.S. 405 (1900). Holders of that certificate of title take the registered land encompassed by the certificate “free from all encumbrances except those noted on the certificate,” subject to certain exceptions not applicable here. G. L. c. 185, § 46, as appearing in St. 1981, c. 658, § 26.
By virtue of the survey and resulting plan prepared through the registration process, both the title and precise boundaries of the registered land evidenced by a certificate of title are verified and defined with precision. Through examining the certificate of title for a parcel of land, together with the corresponding plan main *542 tained by the Land Court, one readily can determine with exactitude the identity of the registered owner, the precise boundaries, and the rights and encumbrances affecting the land. Pursuant to G. L. c. 185, § 115, a property owner can seek to amend an existing certificate of title by filing a supplemental petition for registration, commonly known as an “S-petition.” See, e.g., Arno v. Commonwealth, 457 Mass. 434, 441 (2010).
The beach area at issue in this case was formed by accretion. In light of well-established case law applicable to such land,[5] the interveners do not question that the plaintiffs acquired title to their respective shares of this area by operation of law, subject to determination of the particular boundaries of each parcel by operation of governing principles.[6] However, the interveners’ concession that the plaintiffs collectively acquired title to the relevant portion of the beach area does not mean this land therefore is registered property. Simply put, a claim of title to an undetermined portion of accreted land does not equate to registration of the title so acquired. Instead, until the precise bound *543 aries are adjudicated and the certificate of title and plans amended to establish the plaintiffs’ rights as against the world, title to the accreted property remains unregistered. See, e.g., Hurd, Exposition of the Torrens System, An Essay, in The Torrens System of Registration and Transfer of the Title to Real Estate 92-93 (“To give [a parcel] ... an immediate effect [of registration] would be to cut off vested rights in a manner to which the possessor has not given his consent”). In other words, it is the S-petition proceeding that will establish the plaintiffs’ rights on the ground as to particular portions of such land. The majority, like the Land Court judge, conflates the question of title with that of registration. Because the essence of land registration is that property identified with geographical particularity has been subjected to an in rem proceeding, then, by definition, land can become registered land only if it has been subjected to such a proceeding.[7]
Applying that definitional principle to the facts of this case is straightforward. It is undisputed that the current beach area was not owned by the plaintiffs’ predecessors-in-title at the time of the original registration proceedings. Instead, such land at that time indisputably was submerged land owned by the Commonwealth. As a result, the beach area was not part of the original registration proceedings, and cannot be said to be encompassed within the original certificates of title. Nor, up until now, have there been any supplemental registration proceedings adjudicating ownership of the beach area. The plaintiffs brought the current action to accomplish that very end: to amend their certificates of title to establish their title to a share of the accreted land and the boundaries thereto. Only at the point the beach area has been brought into the registered land system will it be subject to the protections enjoyed by registered property, including protection against the accrual of prescriptive rights pursuant to G. L. c. 185, § 53. See Batchelder v. Planning Bd. of Yarmouth, 31 Mass. App. Ct. 104, 108 (1991) (state of title does not change until registration proceeding is complete).
*544 On what basis, then, does the majority purport to treat the beach area as having become registered without its having been subjected to the registration process? In short, the majority appears to accept the judge’s assessment that it would be unfair and unwise to require owners of littoral land to pursue S-petitions if they wanted any accreted land to be registered. In the words of the Land Court judge:
“To hold that accreted land could not automatically become registered would create a heavy burden on littoral owners. Property owners would not only need to closely monitor their changing water lines but would also have to bear the cost of having to update their certificates of title regularly. Failure to periodically update their registration would create the constant need to protect their property line from being claimed by outside parties, despite its initial registration. This is contrary to the purpose of the registration system, to make titles certain and indefeasible ... and would make the registration of littoral properties less meaningful than the registration of landlocked parcels” (citation omitted).
There are numerous problems with such reasoning. First, it is not self-evident what unfairness lies in requiring owners of registered littoral land to file an S-petition if they want their portion of any accreted land to be brought within the registration system and reflected on their certificate of title. In addition, contrary to the judge’s suggestion that frequent S-petitions would need to be filed, an owner of littoral land subject to accretion could seek full protection from any claims of prescription by updating the certificate of title at twenty-year intervals (the time period necessary for any claim for a prescriptive easement to accrue).[8] Requiring such owners to initiate an S-petition in this manner in order to obtain the full benefits of the registered land system for new accretions hardly seems unfair. Indeed, it simply treats such owners the same as all other owners of recorded (that is, nonreg-istered) accreted land.[9]
*545 Moreover, the reasoning of the judge, endorsed by the majority, rests on a logical fallacy: we should treat land as registered, even though it is not, because doing so would serve the goals of the registration system (increased certainty). In addition, allowing “automatic registration” of land that is accreting actually decreases certainty. As noted, one of the central attributes of the land registration system is that one can determine the existence and geographical extent of registered land from mere examination of the certificate of title and its corresponding plan on file with the Land Court. Automatic registration of accreted land is at odds with such certainty, because the boundaries of the land reflected on the certificate of title and corresponding plan will be inconsistent with conditions on the ground (to the extent of any accreted lands that have not yet been the subject of an S-petition).[10] And, as observed above, the determination of boundaries of accreted land is not without some difficulty, subtlety, and uncertainty. See note 6, supra.
The Land Court judge’s additional suggestion that automatic registration is needed to “preserve the water-abutting nature of *546 littoral property” is, at a minimum, overstated. Given the nature of littoral land, any claim of a prescriptive easement will be extremely difficult to prove (and a successful claim of actual adverse possession even harder).[11] In any event, going forward, owners of registered littoral land, just like owners of recorded littoral land, have many means available to prevent such claims from accruing. Those means include what the plaintiffs did here: petitioning to have the accreted land made part of the registered land system.
None of this is to suggest that the Legislature would lack the power to favor the interests of the owners of registered littoral land over those of others in the manner that the plaintiffs desire (and the majority has endorsed). However, nothing in the language or structure of the registration statute suggests that the Legislature has made such a policy choice.[12] Until it does, we are instructed not to read into that act provisions that are not there. Hickey v. Pathway Assn., 472 Mass. 735, 755 (2015) (except as expressly provided by land registration act, ‘“registered land is to be treated in the same manner, and according to the same legal doctrines, that apply to recorded land”). See Williams Bros., Inc. of Marshfield v. Peck, 81 Mass. App. Ct. 682, 686 (2012) (“Absent specific language, we will not presume legislative intent and will not read the [registration] statute to override the common law”). See also G. L. c. 185, § 77 (the act does not “change or affect in any way any other rights or liabilities created by law and applicable to unregistered land”).[13]
In sum, by definition, land cannot become registered until it has been the subject of an in rem registration proceeding. The majority’s holding that the beach area here became immunized from *547 any claims of prescriptive easements decades before it was the subject of such a proceeding is, in my view, untenable. I therefore respectfully dissent.

In ruling that accreted land becomes registered as it is formed, the Land Court judge characterized this as “automatic registration.” Although that moniker aptly describes what the judge had in mind, “automatic registration” is an oxymoron. As explained below, particular land depicted on plans maintained by the Land Court becomes registered only through an in rem process that adjudicates the rights of the world to such land.

The following sources provide useful background to the history of, and the procedures employed by, the land registration system: Land Court Guidelines on Registered Land § 18 (Feb. 27, 2009): Land Court Manual of Instructions for the Survey of Lands and Preparation of Plans § 1.5 (Sept. 23, 2005): Buscher, Jr., The *541 Nature and Evolution of Title (Mar. 4, 2003), available on the Land Court’s own Web site at littp://www.mass.gov/courts/court-info/trial-court/lc/lc-title-gen.html [https://perma.cc/Q779-KV88]; 2 Crocker’s Notes on Common Forms § 1124 (Mass. Cont. Legal Educ. 10th ed. 2016); Buscher, Jr., One Hundred Years in the Law of the Land: A Retrospective of the Work of the Land Court Department of the Trial Court on the Occasion of its One-Hundredth Anniversary, 5 Mass. Legal Hist. 67, 73 (1999); and Turner, Land Title Registration in Massachusetts, 33 Am. L. Rev. 42 (1899).

The Supreme Judicial Court long ago established that land registration is an in rem proceeding even though the property itself is not named as a party. See Tyler v. Judges of the Court of Registration, 175 Mass. 71, 76-77 (Holmes, C.J.), aff’d, 179 U.S. 405 (1900).

As one commentator has summarized the essence of the registration system: “the Commonwealth itself, through the court system, declares and guarantees the state of ownership of particular parcels, any interests existing in them and keeps an authoritative map of these lands.” The Nature and Evolution of Title, supra.

See White v. Hartigan, 464 Mass. 400, 407 (2013), and cases cited. As the majority accurately notes, a littoral owner is not entitled to accreted land in some circumstances. See Michaelson v. Silver Beach Improvement Assn., Inc., 342 Mass. 251, 254 (1961) (recognizing that littoral owner may not be entitled to accreted land if accumulations were “caused by the littoral owner himself’); Lorusso v. Acapesket Improvement Assn., 408 Mass. 772, 780 (1990) (“accretions .. . created by [the] government as a necessary aid to navigation . . . belong to the government”). While the interveners do not claim that such circumstances are present here, the fact remains that there will have been no adjudication of title to the accreted land until the S-petition proceeding has concluded.

Drawing the sideline boundaries that will separate each littoral owner’s share of the accreted land is far from a ministerial act. In 1990, the Supreme Judicial Court reiterated the traditional rule that “the rights of the owners [bordering on accreted land] are to be determined by equitable division, the object of which is to give each parcel the same proportion of waterfront as it would have had if the accretions had not occurred.” Lorusso v. Acapesket Improvement Assn., 408 Mass. at 782. See Allen v. Wood, 256 Mass. 343, 350-351 (1926). Because the shape of the coastline typically changes as a result of the accretions, applying the rule of “equitable division” means that one cannot simply extend existing sidelines in a straight line from their' intersection with the old waterline to intersect with the new waterline. Instead, as the plans the plaintiffs submitted in the case before us well illustrate, the existing sidelines would have to be extended at a pronounced angle. The Land Court has developed surveying protocols on how to draw such boundaries with respect to registered land. See Land Court Manual of Instructions, supra, at §§ 1.5, 2.1.2, 2.1.4.5, 2.3, 3.2.2. See also Lorusso, supra at 781 (recognizing that rule of “equitable division” of accreted lands can be informed by “a positive prescribed rule” [quotation omitted]).

The majority acknowledges that each plaintiffs specific portion of the beach area will be established through the current registration proceeding. It necessarily follows that each plaintiff’s portion cannot be considered as having already become registered land with respect to the other plaintiffs and abutters. The majority nevertheless contends that the beach area still can be considered registered land with respect to the interveners. This ignores the fact that registration is an in rem proceeding that determines the rights of the world to a particular tract of land. The idea that land can be registered with respect to some parties, but not to others, is insupportable.

See G. L. c. 187, § 2 (“No person shall acquire by adverse use or enjoyment a right or privilege of way or other easement from, in, upon or over the land of another, unless such use or enjoyment is continued uninterruptedly for twenty years”).

Because owners of registered littoral land would need to update their' certificates of registration periodically in order to take full advantage of the *545 registered land system, there is perhaps some truth to the judge’s characterization that this “would make the registration of littoral properties less meaningful than the registration of landlocked parcels.” But that result is simply the product of the mutable nature of littoral land and the landowners’ good fortune that their' land is expanding.
Of course, as oft has been observed, owners of littoral land also can lose their' property to the sea, e.g., through erosion. That coastal boundaries are subject to the whims of the sea in both directions presents an equitable reason underlying the common-law principle that title to littoral land generally moves with the waterline. See White v. Hartigan, 464 Mass. at 407 (recognizing “the equitable principle that a property owner who enjoys the benefit of an increase in property when waterlines shift seaward ought also to bear the burden of a decrease in property when waterlines shift landward”). However, such considerations have nothing to do with the separate question whether any accreted land automatically should be considered registered as it is formed. The Land Court judge’s reasoning that “allowing the automatic registration of accretions provides a balance to the burden faced by owners of registered littoral property” again conflates title with registration.

Of course, had the interveners examined the plaintiffs’ existing certificates of title, they could have determined that the plaintiffs’ property extended to the sea and therefore would have known that the beach area was not theirs. But this is doubly irrelevant. First, the interveners presumably could have determined that the plaintiffs owned to the sea regardless of whether any of their' parcels had been registered. Second, a claim for a prescriptive easement turns on the nature and duration of the trespasser’s use, not the state of his knowledge of who owns the underlying fee. See White v. Hartigan, 464 Mass. at 416-419 (discussing elements of prescriptive easement claim over eroded land).

Counsel for the parties, both experienced Land Court practitioners, were unaware of any other registration case since 1989 that raised the subject matter of the current case (the intersection of the law of registered land and the law of accretion). Independent research has not uncovered any.

Of course, many different potential policy choices are available with respect to how accreted land should be treated in a Torrens system. In the only example of which I am aware that a State has addressed the issue by statute, one who petitions for registration of accreted land bears the burden of proving “that the accretion has been in existence for at least twenty years.” See In re Bernard Rudolph Banning to Register & Confirm Title to Land Situate in the Dist. of Koolaupoko, 73 Haw. 297, 302 (1992), quoting from Haw. Rev. Stat. § 501-33.

I agree with the majority’s final point that the interveners’ claims are not aided by any efforts to invoke the rights of the public. However, their' claim that the beach area is not currently registered land is in no way dependent on such efforts.