THERON BATCHELDER & others *vs.* PLANNING BOARD OF
YARMOUTH; PALMER DAVENPORT, trustee, intervener.

No. 89-P-1338.

Barnstable. January 23, 1991. - July 23, 1991.

Present: BROWN, PERRETTA, & LAURENCE, JJ.

*Practice, Civil*, Subdivision control appeal. *Subdivision Control*, Plan,
Planning board, Regulations, Decision of planning board. *Planning
Board. Real Property*, Ownership. *Waiver. Words*, "Record owner."

A trust that had merely filed a complaint to register certain land based
solely on a claim of title by adverse possession did not thereby establish
that it was "record owner" with standing under the applicable planning
board regulations to seek approval of a subdivision plan for develop-
ment of the locus. [106-108]

A municipal planning board was without authority to waive compliance
with its regulations requiring the "record owner" to be the applicant for
approval of a definitive subdivision plan, where such a waiver was in-
consistent with the intent and purpose of the Subdivision Control Law,
G. L. c. 41, §§ 81K et seq. [108-109]

CIVIL ACTION commenced in the Superior Court Depart-
ment on June 10, 1987.

The case was heard by *George C. Keady, Jr.,* J.

*Matthew J. Dupuy* for the intervener.

*Charles M. Sabatt* for the plaintiffs.

BROWN, J. This case arises out of an approval by the de-
fendant, planning board of Yarmouth (board), of a defective
subdivision plan submitted by the trustees of Davenport Re-
alty Trust (trust) for a development which would adjoin the
Blue Rock golf course in Yarmouth. The plaintiffs own prop-
erty abutting the locus. We are asked to decide whether the
trust's ownership interest in the locus was sufficient to obtain
approval of its definitive subdivision plan, and if not, whether
the board had the power to waive "the requirements of its
regulations relative to the applications [for approval of a sub-

division plan] and the presence at any hearing of the owner of record." We conclude that the trust lacked standing to apply for definitive plan approval and that the board's purported waiver of the so-called "owner of record" requirement was inconsistent with the intent and purpose of the Subdivision Control Law. See G. L. c. 41, §§ 81K et seq.

The pertinent facts giving rise to this dispute are as follows. In 1982, the trust filed a complaint in the Land Court to register a parcel of land in South Yarmouth consisting of 6.44 acres (the locus).[1] The complaint was based solely on the trust's "claim of title to [the] locus . . . by adverse possession." The Land Court, as required by G. L. c. 185, § 37, as appearing in St. 1981, c. 658, § 19, referred the complaint for registration to one of its title examiners to "search the records and investigate all facts stated in the complaint or otherwise brought to his notice, and [to] file in the case a report thereon, concluding with a certificate of his opinion upon the title."

During the pendency of the registration proceeding, on July 14, 1986, the trust filed an application with the board for approval of a preliminary subdivision plan of the locus. This application identified the trust as the owner of record and was signed by one of its trustees, Dewitt Davenport, in the space reserved for "signature of owner of record." In the space requesting a deed reference for the property, the trust inserted a reference to a deed recorded in the Barnstable registry of deeds in book 4572, page 155, which covered real property in West Yarmouth more than one mile away from the locus and having no connection with the locus. The application for approval of the preliminary plan was subsequently denied by the board at a meeting held on September 4, 1986.[2]

---

[1] The locus, owned by the trust since 1962, abuts the Blue Rock golf course.

[2] As will be seen, we are not faced with the question whether a planning board properly may allow filing of a preliminary plan by a person who expects to own but does not yet have record title.

By an application dated January 16, 1987, the trust filed a plan with the board seeking approval of a definitive plan. The application identified the owner of record as "John Doe, c/o Town of Yarmouth." The title reference provided in the application referred to the docket number assigned to the trust's land registration complaint. The definitive plan was subsequently approved by the board on May 20, 1987, and a certificate of approval was filed with the town clerk on June 1, 1987.

Subsequent to the board's approval of the definitive plan, the Land Court examiner concluded that the trust "did not have good record title to one hundred percent (100%) of [the] locus" as of the date either plan had been submitted.[3] The trust thereafter voluntarily withdrew its land registration complaint to all but one-half acre of the locus.

On June 10, 1987, the plaintiffs commenced this action to annul the decision of the board approving the definitive plan, alleging that the board's actions were arbitrary and capricious, and in excess of its authority. The trust was allowed to intervene. On July 19, 1989, a judge of the Superior Court entered a judgment annulling the action of the board as having been in excess of its authority. This appeal from that judgment ensued pursuant to G. L. c. 41, § 81BB.

The trial court's duties in hearing and deciding appeals under § 81BB are to conduct a hearing de novo, find the relevant facts, and determine the validity of the planning board's decision. *Fairbairn* v. *Planning Board of Barnstable*, 5 Mass. App. Ct. 171, 173 (1977). This court will not upset the factual determinations of the lower court unless clearly erroneous.

1. It is settled that a planning board regulation requiring the applicant for definitive plan approval to be an "owner of record" is a reasonable regulation. *Kuklinska* v. *Planning Board of Wakefield*, 357 Mass 123, 129 (1970). We think it important that the "owner" of a site be properly identified on

---

[3]The judge found that the trust had "apparently . . . acquired by deed dated May 11, 1987, . . . good record title to [only] a fractional interest, less than 7/28, in the locus."

a definitive plan to be recorded. In *Kuklinska*, the plaintiffs sought to overturn a definitive plan on the ground that the applicant did not own all the land included within the plan. Because the planning board regulation at issue in that case required that the "applicant must be the owner of all the land included in the proposed subdivision," the court held that the definitive plan did not conform to the regulation and was thus invalid.[4] The opinion underscored the point that the regulation was consistent with G. L. c. 41, § 81L, as amended by St. 1961, c. 331, which defines a subdivision applicant as an "owner or his agent". See also *Hahn* v. *Planning Board of Stoughton*, 24 Mass. App. Ct. 553, 556 (1987), where this court reiterated that G. L. c. 41, § 81L, defines an applicant as an "owner or his agent," and upheld the validity of a planning board regulation requiring that the applicant must hold record title to the land shown on the plan.

Here, the regulations promulgated by the board relating to the requirements for obtaining plan approval are not dissimilar to those at issue in *Kuklinska* and *Hahn*.[5] Therefore, the crucial issue is whether the trial judge erred in ruling that the mere filing of a complaint to register land, based solely upon a claim of title by adverse possession, is not sufficient to clothe the plaintiff with "owner of record" status (as required by the board's regulations, note 5, *supra*) for purposes of applying for subdivision approval.

---

[4] Implicit in the court's reasoning in the *Kuklinska* decision was the determination that it is reasonable under G. L. c. 41, § 81M, for a planning board to require that an applicant be an owner of record.

[5] Yarmouth planning board regulation § III, par. 312, requires that the "owner or his representative" be present at the hearing. Section III, par. 332, requires that applicants for preliminary plan approval must submit "Form B" which in turn requires "Name of Owner of Record," a title reference from the Barnstable registry of deeds, and a "Signature of Owner of Record." Section III, par. 333(b), requires that the preliminary plan must contain the "names and addresses of the record owner and the applicant," Section III, par. 341(a), states that the applicant must submit copies of a properly executed form C which requires the "Name of Owner of Record," a registry of deeds title reference, and "Signature of Owner of Record." Finally, § III, par. 342(b), requires that the name of the "record owner" be placed on the application for definitive plan approval.

The defendant filed a complaint to register the property pursuant to G. L. c. 185. The effect of such a complaint, if allowed, is to vest title to the land in the petitioner, thereby making ownership certain and indefeasible. G. L. c. 185, § 1(*a*). *Deacy* v. *Berberian*, 344 Mass. 321, 328 (1964). Contrary to the board's contention, however, the mere act of filing a complaint for registration does not, in itself, affect the state of title. See G. L. c. 185, § 36. Here, the trust withdrew its registration complaint before the Land Court issued a final decree establishing title to the locus. Therefore, there was no sufficient basis upon which the trust could establish that it was the "record owner" of the locus at the time it submitted the preliminary and definitive plans. Accordingly, the trust had no standing to apply for subdivision approval as of the dates the plans were submitted.[6]

2. The board argues that the trial judge erred as matter of law when it ruled that the board did not have the power to waive its regulation that the "owner of record" must sign its application forms and be present at the hearings.[7] We disagree. While it is true that a planning board may, when appropriate, waive strict compliance with its rules and regulations, it may not do so unless such waiver "is in the public interest and not inconsistent with the intent and purpose of the subdivision control law." G. L. c 41, § 81R, as appearing in St. 1953, c. 674, § 7. See *Wheatley* v. *Planning Bd. of Hingham*, 7 Mass. App. Ct. 435, 440 (1979).

Chief among the policy concerns underlying the enactment of the Subdivision Control Law was to ensure the provision of "adequate drainage, sewerage, and water facilities, without harmful effect to adjoining land and to the lots in the

---

[6]We have no occasion to address the board's argument that the trust's subsequent purchase of a fractional interest in the locus relates back to the time the plans were filed, and thus is sufficient to confer "owner of record" status (see *Kuklinska*, 357 Mass. at 129), because on the date the definitive plan was approved, the trust had title only to a portion of the locus. See note 3, *supra.*

[7]The trial judge concluded that although the board never specifically waived these requirements of its regulations, "it attempted to do so de facto."

subdivision." *Meyer* v. *Planning Bd. of Westport*, 29 Mass. App. Ct. 167, 170 (1990). See G. L. c. 41, § 81M. One of the ways in which this objective is achieved by local planning boards is to secure a covenant from the "owner of record" which provides for the installation of adequate municipal services. G. L. c. 41, § 81U. If the owners of record are not fully identified or if the planning board has been misled as to the record owners, the public would not be protected because the board would be unable to ensure that it would receive a properly executed covenant, or in the event of a modification or amendment of a plan approval, a properly executed consent. G. L. c. 41, § 81W. See *Stoner* v. *Planning Bd. of Agawam*, 358 Mass. 709, 715 (1971). Therefore, a waiver, as here, of the board's regulations which require the record owner to be the applicant for plan approval, or at a minimum to participate in the application process by executing forms B and C and appearing at the hearing, would undermine one of the principal aims of the statute. *Wheatley* v. *Planning Bd. of Hingham, supra.*

*Judgment affirmed.*