Fabricant, J.
INTRODUCTION
This is an action for review of a 1997 decision of the Westford Planning Board approving an amendment to a previously-approved subdivision plan. The parties have submitted the case on an agreed record, consisting of twenty-two exhibits, and have stipulated that those exhibits “and the reasonable inferences from them constitute all the material facts necessary to decide this case.” After hearing, and review of the stipulated record, the Court finds and concludes as follows.
FINDINGS OF FACT
1. The rules and regulations of the Planning Board of the Town of Westford are set forth in Chapter 218 of the town’s code, entitled “Subdivision of Land.” Pertinent portions of Chapter 218, as they were in effect at the time of the 1997 decision in issue here, are the following:
Article II, Section 218-3: Applicant:
The “applicant” (or “applicants”) shall be the owner (or owners) or the duly authorized agent or representative of the owner(s), or his or her assigns, of all land included in the subject request for action before the Planning Board. If a plan for a subdivision of land is to be submitted by one representing to be the agent or assign of an owner, a notarized certificate shall be submitted, signed by the owner, authorizing the person filing the plan to act as agent or assign.
Article III, Section 218-5. Administration:
No plan shall be deemed to have been submitted to the Board until said plan, together with all application forms, fees and other items as required and executed as specified herein, has been delivered in person to the Board at a meeting hereof or by registered or certified mail to the Board and by giving of notice by mail to the Town Clerk by the applicant.
Article III, Section 218-7. Waiver of Compliance:
Strict compliance with the requirements of these rules and regulations may be waived when, in the judgment of the Board, such action is in the public interest and not inconsistent with the intent and purpose of the Subdivision Control Law.
Article V, Section 218-13A. Streets. (2) Classification of Streets:
(b) All streets in a residential subdivision shall be assumed to be secondary streets unless the developer can prove by the design of the subdivision or deed restriction that the streets will not be extended to serve other adjacent properties in the future.[1]
2. In June of 1991, the Board considered a proposal submitted by the Greater Lowell YWCA, on behalf of itself and the Kaknes family,[2] for a six-lot subdivision of a parcel of land abutting Long Sought For Pond, off Tyngsborough Road, in Westford. The proposal as considered at that time included waivers of certain requirements of the Board’s regulations. The Board’s planning consultant, Peter Wells, analyzed the proposal and reported to the Board. Wells recommended that the Board grant some of the requested waivers and not others, for various reasons that he expressed, and further recommended that “Any and all Order of Conditions approved by the Conservation Commission must be strictly complied with.” Wells recommended against a waiver of the requirement of a twenty-seven foot wide secondary road, as opposed to a twenty-two foot wide minor road, because “it is probable that the roadway will have to be extended in the future to serve future development on adjoining properties.” He also recommended against a waiver of the requirement of a sidewalk “since there is the good likelihood that children will have to walk out to Tyngsboro Road to catch the school bus, and they should have the protection of being out of the flow of vehicular traffic.” In response to these recommendations, the YWCA’s attorney assured that Board that “it is not the intent of the YWCA to extend this roadway, because of the adverse affect that further development would have on the operation of the camp,” referring to a YWCA summer camp on adjacent land. On July 22, 1991, the Planning Board issued a Certificate of Approval of the plan, with waivers of various requirements of the rules, along with specified conditions. The certificate *454 granted a waiver of the requirement of a “secondary” road, but did not waive the requirement of a sidewalk.
3. The present plaintiffs did not appeal from the Board’s approval of the plan, but another abutter did, delaying further action on the project until after resolution of that appeal in 1995. At that time, the YWCA filed a Notice of Intent with the Town’s Conservation Commission. That body expressed to the YWCA its preference for a narrower road “to minimize impact of the project within the [wetlands] buffer zone.” The YWCA conferred with the Board and its consultant, and then, in January of 1996, on behalf of itself and the Kaknes,[3] submitted an Amended Subdivision Plan, providing for narrowing of the road to eighteen feet, with four foot shoulders, and re-alignment of the road to "reduce the amount of trees being cleared by approximately 25 in the Buffer Zone.” The amendment also sought waiver of the sidewalk requirement, “to minimize the impact of the subdivision road on the natural environment" in that “[t]he addition of 6 new houses does not justify a sidewalk in this particular instance when it is weighed against the additional alterations needed.” On March 18, 1996, the Board held a public hearing on the proposed amendment. Minutes of that hearing reflect expression of various concerns, including concern for safety of children in the absence of a sidewalk, as well as a countervailing concern for the environmental impact of construction of the road with a sidewalk. The Board’s staff also reviewed the proposed amendment, noting in its report that the Conservation Commission considered the amendment “a substantial improvement in the project’s environmental impact and runoff control,” and that “the deletion of required sidewalks will result in a significant reduction in this project’s environmental impact.” The staff reported that it “is concerned with the potential future subdivision of Lot A, containing 26 acres, located at the end of the proposed new roadway,” but nevertheless expressed the view that the “combination of design alterations will result in increased conformity with the Westford Rules and Regulations, and will decrease wetland impacts and the number of trees to be removed.” Staff recommended certain conditions on any approval. On April 16, 1996, the Board approved the amendment by a vote of four to one. The Board issued a Certifícate of Approval, subject to specified conditions, on May 6, 1996.
4. The present plaintiffs brought an action for review of the Board’s 1996 approval of the amendment, raising among other grounds the YWCA’s failure to file a copy of the plan with the Town Clerk. To cure that defect, on March 14, 1997, the YWCA submitted for the Board’s approval an identical Amended Subdivision Plan, including a request that the Board incorporate by reference “all materials submitted” in support of the original plan and of the previously approved amendment. The Board held a hearing on this new application on April 22, 1997. On May 6, 1997, the YWCA’s attorney provided to the Board a copy of a notarized agreement between the YWCA and Mary Frances Kaknes, as Trustee of the E and F Realty Trust, dated April 30, 1997, under which Kaknes acknowledged that she owned a portion of the land affected by the subdivision plan, and appointed the YWCA as her agent for the purpose of submitting the application for approval of the plan. On May 5, 1997, the Board voted four to one to approve the plan. On that same date the Board issued a Certificate of Approval, subject to the same conditions as in 1996.
5. On May 21, 1997, the plaintiffs filed this action for review of the Board’s decision pursuant to G.L.c. 41, §81BB. The plaintiffs’ complaint alleges that they are owners of abutting land, that they are aggrieved by the Board’s decision, and that the decision exceeds the authority of the Board.
6. On two other occasions reflected in correspondence included in the stipulated record, the Board has rejected applications as not in compliance with its regulations. In one of these instances, in June of 1996, the Board informed the applicant that the application was defective in that it failed to provide proper wetland delineation and driveway locations. In the second, instance, in January of 1997, the Board informed the applicant that its application was defective in that it failed to provide driveway locations, results of soil borings and test pits, reports of impact on traffic and town services, and tabulation of building types, size, ground coverage, and open space.[4]
CONCLUSIONS OF LAW AND DISCUSSION
The role of the Court in considering an appeal pursuant to G.L.c. 41, §8 IBB from approval of a subdivision plan is defined by the plain terms of that statute, which directs that the Court “shall hear all pertinent evidence and determine the facts, and upon the facts so determined, shall annul such decision if found to exceed the authority of such board.” See Batchelder v. Planning Board of Yarmouth, 31 Mass.App.Ct. 104, 106 (1991), citing Fairbairn v. Planning Board of Barnstable, 5 Mass.App.Ct. 171, 173 (1977); Mac-Rich Realty Construction, Inc. v. Planning Board of Southboro, 4 Mass.App.Ct. 79, 83 (1976); Selectmen of Ayer v. Planning Board of Ayer, 3 Mass.App.Ct. 545, 548 (1975). In making this determination, the reviewing court may not substitute its judgment for that of the planning board, nor may it exercise independent discretion; rather, the court is limited to determining whether, on the facts as it finds them to be, the Board’s decision was within its lawful power. See Arrigo v. Planning Board of Franklin, 12 Mass.App.Ct. 802, 809 (1981); Strand v. Planning Board of Sudbury, 5 Mass.App.Ct. 18, 23-24 (1977). The party objecting to the board's action bears the burden of establishing that the board’s action was in excess of its authority. See Windsor v. Planning Board of Wayland, 26 Mass.App.Ct. 650, 657 (1988), citing Selectmen of Ayer v. Planning Board of Ayer, 3 *455 Mass.App.Ct. at 548; Strand v. Planning Board of Sudbury, 7 Mass.App.Ct. 935, 936 (1979).
General Laws c. 41, §81R, provides that, in considering a subdivision proposal, “a planning board may in any particular case, where such action is in the public interest and not inconsistent with the intent and purpose of the subdivision control law, waive strict compliance with its rules and regulations ...” The decision to grant or deny such a waiver is committed to the discretion of the planning board, subject to the standards established by the statute. See Rattner v. Planning Board of West Tisbury, 45 Mass.App.Ct. 8, 12 (1998) (recognizing that reasons underlying a grant of waiver need not be reduced to writing); McLaughlin v. Board of Selectmen of Amherst 38 Mass.App.Ct. 162, 171 (1995). In reviewing a board’s grant of a such a waiver, the Court is subject to the same constraints that apply to review of planning board decisions generally. Indeed, the board’s broad discretion to evaluate the public interest in deciding whether to grant such a waiver renders the objecting party’s burden of proof “nearly insupportable.” Windsor, 26 Mass.App.Ct. at 657, citing Arrigo v. Planning Board of Franklin, 12 Mass.App.Ct. at 808. As the Court explained in Arrigo:
If consonance with “the public interest” is a justiciable standard ..., it is obviously one that involves a large measure of judgment or discretion. If, in a given case, it is one as to which reasonable minds might in good faith differ, without doubting the reasonableness of the opposing view, the conclusion reached by the planning board should be sustained on judicial review.
12 Mass.App.Ct. at 809 (citations omitted).
In support of their appeal from the Planning Board’s decision, the plaintiffs assert that the Board “should not have approved” the amended plan, “because the waiver of the requirement for constructing a Secondary Street and the installation of the required sidewalk ... is inconsistent with the intent and purpose of the subdivision control law and not in the public interest.” The record, however, reveals that the Board weighed the competing considerations, including the environmental impact of construction of the secondary road and sidewalk, and determined that the public interest would be best served by granting the requested waivers. Nothing in the record indicates that that determination was beyond the range of reasonable under the circumstances, or was in any other respect in excess of the Board’s authority. Absent such a showing, the Court is compelled to affirm the Board’s decision; the statute does not empower the Court to perform its own evaluation of the public interest, and to substitute its judgment for that of the Board.
The plaintiffs second argument is that the Board lacked authority to act on the application because the application had not been signed by Mary Kaknes,[5] as owner of a part of the property affected, nor did the application include, at the time of its submission, a notarized certificate signed by Kaknes appointing the YWCA as her agent. In support of this argument, the plaintiffs rely on Batchelder v. Planning Board of Yarmouth, 31 Mass.App.Ct. 104, 109 (1991).
In Batchelder, the applicant’s claim of ownership was based on a theory of adverse possession, which it had advanced in a land registration proceeding that was pending in the Land Court at the time it submitted its application to the Board. Under those circumstances, the Appeals Court ruled that the applicant lacked standing to apply for subdivision approval. The Court went on to rule that the Board’s waiver of its requirement that the applicant be the owner of record exceeded its authority in that it “would undermine one of the principal aims of the statute.” The Court based this conclusion on its observation that “(i]f the owners of record are not fully identified or if the planning board has been misled as to the record owners, the public would not be protected because the board would be unable to ensure that it would receive a properly executed covenant [for installation of municipal services) or in the event of a modification or amendment of a plan approval, a properly executed consent.”
Here, unlike in Batchelder, nothing in the record suggests the existence of any uncertainty, or any dispute, as to the identity of the owners of the land in issue, nor do these plaintiffs assert any claim of ownership. To the contrary, it appears to be undisputed that all concerned had been fully aware since 1991 not only that the Kaknes owned part of the land, but that they had authorized the YWCA to act as their agent for purposes of submitting and pursuing the application for subdivision approval. What was lacking at the time the application was submitted was neither record title nor actual authorization, but merely formal proof of authorization, and even that gap was filled before the Board’s decision. Under these circumstances, the Board could properly conclude that waiver of the requirement of formal certification at the time of application was consistent with the purposes of the statute and with the public interest. Compare Silva v. Planning Board of Somerset, 34 Mass.App.Ct. 339, 342 (1993) (noting Board’s authority to waive strict compliance with regulations, but absence of indication that it consciously waived requirement of signature by record owner; remanding on unrelated ground).
The plaintiffs point to the two instances, reflected in correspondence submitted as part of the stipulated record, when the Board rejected applications for failure to comply with documentation requirements. Based on those two instances, the plaintiffs assert that “it was the strict policy of the Planning Board that any application for the approval of a definitive subdivision plan which did not comply with all of the Rules and regulations would be rejected.” The two instances cited *456 fall well short of proving the existence of any such “strict policy”; they show only that in those cases the Board declined to waive requirements that applications provide the information specified, which included substantive information regarding the nature and impact of the proposals. The Board’s action in those two cases is not inconsistent with its decision here, where all substantive information had been provided.[6]
CONCLUSION AND ORDER
For the reasons stated, it is hereby ORDERED that JUDGMENT enter affirming the decision of the Planning Board of the Town of Westford.

Section 218-13(1) provides “design standards” for the various classifications of streets. Under that provision, residential “secondary” streets must have pavement width of 27 feet while “minor” streets must have pavement width of 22 feet. Both types must have one sidewalk.

Correspondence between the YWCA’s attorney and the Board at the time of the 1991 application acknowledged that Ernest and Mary Francis Kaknes owned part of the land in issue.

The YWCA’s attorney stated in his March 14, 1996, cover letter to the Board submitting the application that he was acting “on behalf of the Greater Lowell YWCA and the Kaknes.”

The plaintiffs’ memorandum of law asserts an additional fact, not reflected in the stipulated record, but apparently not disputed. According to the plaintiffs, in July of 1999, the YWCA announced that it had closed the camp, and acknowledged the possibility that it might sell that land to a private developer.

The record leaves some uncertainty as the status of Ernest Kaknes; the Court infers that sometime between the 1996 and 1997 applications title to the Kaknes property passed from Ernest and Mary Kaknes jointly to Mary Kaknes as trustee.

The practicalities of this situation warrant acknowledgment. Were the Court to vacate the Board’s decision on this technical ground, the inevitable result would be yet another resubmission, with the notarized agreement that has already been provided. Unless some change in the composition of the Planning Board has occurred that would alter its exercise of discretion, all indications are that it would reiterate its previous decisions, setting off yet another appeal. All that would have been accomplished is further delay in this already long-delayed project. No public benefit would justify the resulting harm to the project proponent.