NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

15-P-923                                      Appeals Court

PETER R. BROWN, trustee,[1] & others[2]  vs.  JAN H. KALICKI &
another.[3]

No. 15-P-923.

Suffolk.     June 13, 2016. - October 20, 2016.

Present:  Cohen, Milkey, & Massing, JJ.


Real Property, Registered land, Littoral property, Certificate
     of title, Easement.  Land Court, Registration proceedings.
     Adverse Possession and Prescription.



     Civil actions commenced in the Land Court Department on
September 29, 2011.

     The cases were heard by Alexander H. Sands, III, J., on a
motion for summary judgment.


     Diane C. Tillotson for the defendants.
     Brian M. Hurley for the plaintiffs.

_____

     [1] Of the 7 Davis Lane Trust.

     [2] Nancy Powers-Ferris and John E. Ferris; and John J. Powers
and Lauren K. Powers, as trustees of the John J. Powers
Qualified Personal Residence Trust and the Lauren K. Powers
Qualified Personal Residence Trust.

     [3] John Michael Hershey.  The Commonwealth and the town of
Harwich were defendants in the Land Court proceeding but are not
parties to this appeal.

COHEN, J.  The plaintiffs are the respective owners of three parcels of registered land located at 3, 7, and 11 Davis Lane, a private way in the town of Harwich (town).  These parcels extend in a more or less southerly direction from Davis Lane to the shoreline of Nantucket Sound.  Over time, the shoreline has changed, and the parcels have accreted[4] significant portions of formerly submerged land.

On September 29, 2011, the parcel owners filed supplemental petitions in the Land Court, seeking to amend their certificates of title.  Jan H. Kalicki and John Michael Hershey (interveners) moved to intervene as defendants, alleging that they had acquired prescriptive rights over the accreted land.  Upon informal consolidation of the cases for decision on the plaintiffs' motions for summary judgment, the motion judge rejected the objections of the interveners and granted summary judgment to the plaintiffs.

The question for the judge was whether the accreted beachfront took on the status of registered land as it formed, or whether registered status could be obtained only through court proceedings to amend the certificates of title.  The

---

[4] "Accretion" has been described as occurring "[w]hen the line between water and land bordering thereon is changed by the gradual deposit of alluvial soil upon the margin of the water." Allen v. Wood, 256 Mass. 343, 349 (1926) (quotation omitted).

judge ruled that the accreted beachfront automatically became registered, and, therefore, was protected from the interveners' claims that they have a prescriptive easement to use the beach area on the plaintiffs' land. Applying well-established standards of review,[5] we affirm.

Background. The material facts are not in dispute. The land comprising the plaintiffs' parcels was registered in the 1920's and 1930's.[6] Under the terms of each certificate of title, "[a]ll of said boundaries, except the water lines, are determined by the Court to be located as shown on" the associated Land Court plan. Each of the registration plans shows and identifies the southern boundary of the subject parcel as "Nantucket Sound."

In the decades following the registration proceedings, the size of the parcels grew substantially as a result of accretion. For example, a 2011 plan shows that since 1943, the waterfront

---

[5] "The allowance of a motion for summary judgment is reviewed de novo. The standard of review of a grant of summary judgment is whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to judgment as a matter of law." White v. Hartigan, 464 Mass. 400, 406 (2013) (citations and quotations omitted).

[6] There were three initial registration proceedings, in 1923, 1933, and 1939. However, two of the parcels were merged and later subdivided along a different boundary. Thus, the original registration proceedings do not correspond exactly with the parcels in their current configuration.

boundaries of the two easternmost parcels had extended seaward some 347 to 358 feet.  The interveners took the position that the accretion resulted, at least in part, from the erection of a jetty by the town; however, as the judge noted in his decision, this claim was never litigated.  Regardless, the judge ruled (and it is not disputed) that even if the jetty contributed to the accretion, a littoral owner ordinarily will still acquire ownership of accreted land that is created with human intervention so long as it was not caused by the owner himself. See Lorusso v. Acapesket Improvement Assn., 408 Mass. 772, 780 (1990).[7]

The plaintiffs appended to their supplemental petitions proposed plans depicting extended sidelines through the accreted land, as well as the approximate mean high and low water marks at the parcels' boundaries with Nantucket Sound.  According to representations made in the plaintiffs' brief and at oral argument before this court, their purpose in filing the

---

[7] The general rule is that "[t]he line of ownership [of littoral property] follows the changing water line."  White v. Hartigan, 464 Mass. at 407, quoting from East Boston Co. v. Commonwealth, 203 Mass. 68, 75 (1909).  However, there are two recognized exceptions.  The owner may not be entitled to the accreted land if the owner caused the accumulations, see Michaelson v. Silver Beach Improvement Assn., Inc., 342 Mass. 251, 254 (1961); and, if the accretions were created by the government as a necessary aid to navigation, they belong to the government.  Lorusso v. Acapesket Improvement Assn., 408 Mass. at 780.  Neither of these exceptions is applicable here.

supplemental petitions was to establish the parcels' extended sidelines and thereby resolve any questions between abutting landowners as to their respective ownership rights in the accreted land. See Lorusso v. Acapesket Improvement Assn., supra at 780-781. Whatever their objectives, however, we draw no inference from the fact that the plaintiffs initiated proceedings to amend their certificates of title.

A court-appointed title examiner filed a report on March 23, 2012, and citations issued. The Commonwealth and the town both filed objections, but they later resolved their concerns and withdrew them.[8] Meanwhile, local residents, including Kalicki and Hershey, were permitted to intervene as defendants[9] and filed their own objections.

The interveners did not dispute that the plaintiffs own the accreted, previously submerged land by operation of law. See

---

[8] The Commonwealth withdrew its objections after the execution of stipulations with each of the plaintiffs that any decree would reflect that the area between the mean high water mark and mean low water mark would be subject to the rights of the public. The town withdrew its objections after entering into a settlement agreement with the plaintiffs regarding, inter alia: the boundary between the easternmost of the subject parcels and a town-owned beach, the relocation of a town-owned path to the beach, and the installation of fencing and signs. The agreement also set out contingencies for easements that would be established if the town conservation commission failed to approve the settlement, or if its approval was overturned on appeal.

[9] Kalicki intervened in all three cases; Hershey intervened in two.

note 7, supra. Nonetheless, they claimed that they had acquired prescriptive easements to use the parcels' beach area. The easternmost of the plaintiffs' parcels, situated at 11 Davis Lane, abuts the town-owned Bank Street beach. Where Davis Lane is met from the north by a town way, Bay View Road, there is a town-owned path extending seaward along the edge of the town-owned beach adjacent to the 11 Davis Way parcel. The interveners alleged that for decades they and their predecessors had used the town-owned path to gain access to the plaintiffs' parcels, and that they had engaged in continuous, open, and notorious adverse use of the parcels' beach area. See Boothroyd v. Bogartz, 68 Mass. App. Ct. 40, 46 (2007).

Without conceding the facts underlying the interveners' claims, the plaintiffs argued on summary judgment that the claims failed as matter of law, because -- by statute -- one cannot obtain prescriptive rights in registered land, see G. L. c. 185, § 53, and the accreted beachfront was protected by the existing registrations. The interveners countered that the previously submerged accreted land was not registered land when their prescriptive rights accrued, and could not become registered land until the parcels' certificates of title were amended. The judge agreed with the plaintiffs, finding "that the accreted land automatically became a part of the registered land as it was formed," and judgment entered for the plaintiffs.

Discussion. The specific issue presented -- whether accretions to registered littoral land automatically acquire registered status at the time of their creation -- has not been decided by the appellate courts. However, in 1989, a different judge of the Land Court (Fenton, J.) confronted the issue in Lorusso vs. Acapesket Improvement Assn., Inc. (Land Court No. 314-S, March 24, 1989).[10] The motion judge in the present case relied largely on the rationale of the earlier Land Court judge, which can be summarized briefly as follows.

Littoral boundaries "frequently change, so that the actual boundaries will rarely correspond exactly with what is depicted on a registered owner's certificate of title or land court plan." Ibid. Thus, if accreted land is not deemed registered upon its creation, owners of littoral property would need to "amend their [c]ertificates of [t]itle on a regular basis to prevent any loss in their property rights due to adverse use by another. This would be inconsistent with one of the principle purposes of the registration system: 'to make titles certain and indefeasible.'" Ibid., quoting from Michaelson v. Silver Beach

---

[10] When the case reached the Supreme Judicial Court, the only question presented was whether the defendant, whose property (a sand bar) had eroded away, was entitled to an equitable share of accretions to the plaintiff's beachfront property; the issue of automatic registration of accreted land was not appealed. See Lorusso v. Acapesket Improvement Assn., Inc., 408 Mass. at 773.

Improvement Assn., Inc., 342 Mass. 251, 260 (1961).
Automatically endowing the accreted land with registered status
also counterbalances the downside of owning registered littoral
property, namely, that despite the protections afforded by
registration, the landowner still bears the risk of losing all
rights to any land that erodes away.  See ibid.

     We find this reasoning compelling, at least in the
circumstances of the present case.  Here, the interveners are
not adjacent beachfront owners with their own rights in the
accretions, and their claims relate only to the use of the
expanded beach area at the shore of Nantucket Sound.  As between
adjacent beachfront owners, questions of ownership, not to
mention registration, may need to be determined in court.  As
the Supreme Judicial Court explained, "[t]he rule that the owner
of littoral land gains ownership of accretions to his land is
subject to, and modified by, the further rule that, when two or
more littoral owners have rights to simultaneously formed
accretions, the rights of the owners in the accretions are to be
determined by the doctrine of equitable division."  Lorusso v.
Acapesket Improvement Assn., Inc., 408 Mass. at 780-781.  "[T]he
object of apportioning simultaneous accretions among lots of
littoral land is to give each owner the same proportion of the
new waterfront that he would have had if the accretions had
never occurred."  Id. at 781.  Thus, depending upon the vagaries

of the accretion, court proceedings to establish sideline boundaries and to amend the certificates of title may well be necessary and prudent.

Here, however, the waterfront boundary is the determinative factor, and it presents no uncertainty. No amendment to the prior registrations is necessary to establish definitively that the parcels remain bounded on the south by Nantucket Sound, as stated in the original certificates of title. In these circumstances, the plaintiffs, whom the interveners acknowledge to be the owners of the accreted land, should continue to derive the protection that the original registrations afforded them from claims of prescriptive rights in the beach.

Although the interveners emphasize that the amount of accretion is substantial, that fact is irrelevant. As the motion judge explained, even though the plaintiffs could not have contemplated how much land would accrete to their property when they purchased or registered their parcels, the same can be said about any owner of littoral land. No such owner can predict whether or by how much their property will grow or recede, or how frequently or suddenly the shoreline will change one way or the other. What is relevant here is that the parcels have remained bounded by the sea, as stated in the original certificates of title.

This analysis does not conflate ownership and registration, as the dissent suggests, nor does it undermine the purposes of the registration system. It simply recognizes that there are sound reasons to extend the protections afforded by the registration system to accretions to registered land and thereby foreclose claims of prescriptive rights by individuals with no shared ownership interest in those accretions.

The interveners' final point is that the importance of public rights militates against conferring registered status automatically upon accreted land. We see no reason why that should be the case. When land has accreted, the public retains its access and rights to the tidelands wherever they exist, and may fish, fowl, or navigate in those tidelands as established by the Colonial Ordinance of 1641-1647. See Pazolt v. Director of the Div. of Marine Fisheries, 417 Mass. 565, 571 (1994). See also Michaelson v. Silver Beach Improvement Assn., Inc., 342 Mass. at 261. In Michaelson, the Commonwealth had caused accretion to registered land by dredging and pumping sand from the floor of the harbor. Id. at 252 The court concluded that because the landowners did not cause the accretion, the law applicable to natural accretions should govern. Thus, the landowners had title to the newly created beach, and the public had no right to use it, except as to the portion between the

high and low water mark, for the purposes of navigation, fishing, and fowling.  Id. at 261.  The result is the same here.

To the extent that the interveners suggest, by analogy to Arno v. Commonwealth, 457 Mass. 434 (2010), that the public may have additional rights in land that once was Commonwealth tidelands, they have no standing to raise the issue.  See Attorney Gen. v. Williams, 174 Mass. 476, 483 (1899); Wellfleet v. Glaze, 403 Mass. 79, 88 (1988) (Wilkins, J., concurring).  Notably, those charged with protecting public rights -- the Commonwealth and the town -- have resolved their concerns and withdrawn their objections, as discussed above.  See note 8, supra.

Conclusion.  The accreted beach area on the plaintiffs' parcels is entitled to the protection afforded by registration and is not subject to the prescriptive easement claims alleged by the interveners.  Accordingly, the judgment of the Land Court is affirmed.

So ordered.

MILKEY, J. (dissenting).  The interveners claim that through many decades of open, adverse use, they obtained prescriptive easements in a particular beach area.  That beach area did not exist at the time that the parcels now owned by the plaintiffs were registered.  Nor has it since then, until now, been the subject of any supplemental registration proceeding.  Nevertheless, the majority concludes that the beach area should be treated as if it automatically had become registered land as it was being formed.[1]  Because that conclusion is unsupported by the language of the registration statute and inconsistent with the essential nature of registered land, I respectfully dissent.

As an initial matter, I note what makes registered land distinct from other property.  Under the ordinary system in which title to land is memorialized, county registries of deeds serve as public repositories in which private deed transfers are recorded.  In each such deed, the property at issue is typically described by means of a metes and bounds description.  The validity of the title held by a person claiming ownership of a parcel of land can be tested and verified only by means of a

---

[1] In ruling that accreted land becomes registered as it is formed, the Land Court judge characterized this as "automatic registration."  Although that moniker aptly describes what the judge had in mind, "automatic registration" is an oxymoron.  As explained below, particular land depicted on plans maintained by the Land Court becomes registered only through an in rem process that adjudicates the rights of the world to such land.

search of prior registry records, following a chain of title to a source deed.  As the Supreme Judicial Court has observed, the problem with the ordinary system of recording deeds is that "no one can be absolutely certain whether he is buying a good title or a bad one."  Kozdras v. Land/Vest Properties, Inc., 382 Mass. 34, 44 (1980), quoting from Hurd, Exposition of the Torrens System of Registration of Title, An Essay, in The Torrens System of Registration and Transfer of the Title to Real Estate 88-89 (Yeakle ed. 1894).[2]

To get rid of that uncertainty and "all the expense, trouble and delay that attend running the title back through previous transfers," the Legislature developed an alternative way of recording title.  Ibid., quoting from Hurd, supra. Specifically, in 1898, the Legislature created a registration system based on one implemented in Australia by Sir Robert

_____

[2] The following sources provide useful background to the history of, and the procedures employed by, the land registration system:  Land Court Guidelines on Registered Land § 18 (Feb. 27, 2009); Land Court Manual of Instructions for the Survey of Lands and Preparation of Plans § 1.5 (Sept. 23, 2005); Buscher, Jr., The Nature and Evolution of Title (Mar. 4, 2003), available on the Land Court's own web site at http://www.mass.gov/courts/court-info/trial-court/lc/lc-title-gen.html [https://perma.cc/Q779-KV88]; 2 Crocker's Notes on Common Forms § 1124 (Mass. Cont. Legal Educ. 10th ed. 2016); Buscher, Jr., One Hundred Years in the Law of the Land:  A Retrospective of the Work of the Land Court Department of the Trial Court on the Occasion of its One-Hundredth Anniversary, 5 Mass. Legal Hist. 67, 73 (1999); and Turner, Land Title Registration in Massachusetts, 33 Am. L. Rev. 42 (1899).

Torrens. St. 1898, c. 562. See McQuesten v. Commonwealth, 198 Mass. 172, 177 (1908). Under this alternative system, parcels are surveyed and plotted with precision on plans maintained by a specialized court (originally known as the Court of Registration, later renamed the Land Court). After a court-appointed title examiner conducts an extensive investigation into the title of the depicted tract, and appropriate notice is provided to potentially interested parties, the court holds an in rem proceeding to adjudicate title to the property.[3] That adjudication results in a certificate of title that establishes the rights of the world to that particular tract.[4] See Tyler v. Judges of the Court of Registration, 175 Mass. 71, 73-74, aff'd, 179 U.S. 405 (1900). Holders of that certificate of title take the registered land encompassed by the certificate "free from all encumbrances except those noted on the certificate," subject to certain exceptions not applicable here. G. L. c. 185, § 46, as appearing in St. 1981, c. 658, § 26.

---

[3] The Supreme Judicial Court long ago established that land registration is an in rem proceeding even though the property itself is not named as a party. See Tyler v. Judges of the Court of Registration, 175 Mass. 71, 76-77 (Holmes, C.J.), aff'd, 179 U.S. 405 (1900).

[4] As one commentator has summarized the essence of the registration system: "the Commonwealth itself, through the court system, declares and guarantees the state of ownership of particular parcels, any interests existing in them and keeps an authoritative map of these lands." The Nature and Evolution of Title, supra.

By virtue of the survey and resulting plan prepared through the registration process, both the title and precise boundaries of the registered land evidenced by a certificate of title are verified and defined with precision.  Through examining the certificate of title for a parcel of land, together with the corresponding plan maintained by the Land Court, one readily can determine with exactitude the identity of the registered owner, the precise boundaries, and the rights and encumbrances affecting the land.  Pursuant to G. L. c. 185, § 115, a property owner can seek to amend an existing certificate of title by filing a supplemental petition for registration, commonly known as an "S-petition."  See, e.g., Arno v. Commonwealth, 457 Mass. 434, 441 (2010).

The beach area at issue in this case was formed by accretion.  In light of well-established case law applicable to such land,[5] the interveners do not question that the plaintiffs

---

[5] See White v. Hartigan, 464 Mass. 400, 407 (2013), and cases cited.  As the majority accurately notes, a littoral owner is not entitled to accreted land in some circumstances.  See Michaelson v. Silver Beach Improvement Assn., Inc., 342 Mass. 251, 254 (1961) (recognizing that littoral owner may not be entitled to accreted land if accumulations were "caused by the littoral owner himself"); Lorusso v. Acapesket Improvement Assn., 408 Mass. 772, 780 (1990) ("accretions . . . created by [the] government as a necessary aid to navigation . . . belong to the government").  While the interveners do not claim that such circumstances are present here, the fact remains that there will have been no adjudication of title to the accreted land until the S-petition proceeding has concluded.

acquired title to their respective shares of this area by operation of law, subject to determination of the particular boundaries of each parcel by operation of governing principles.[6] However, the interveners' concession that the plaintiffs collectively acquired title to the relevant portion of the beach area does not mean this land therefore is registered property. Simply put, a claim of title to an undetermined portion of accreted land does not equate to registration of the title so acquired. Instead, until the precise boundaries are adjudicated and the certificate of title and plans amended to establish the plaintiffs' rights as against the world, title to the accreted property remains unregistered. See, e.g., Hurd, Exposition of

---

[6] Drawing the sideline boundaries that will separate each littoral owner's share of the accreted land is far from a ministerial act. In 1990, the Supreme Judicial Court reiterated the traditional rule that "the rights of the owners [bordering on accreted land] are to be determined by equitable division, the object of which is to give each parcel the same proportion of waterfront as it would have had if the accretions had not occurred." Lorusso v. Acapesket Improvement Assn., 408 Mass. at 782. See Allen v. Wood, 256 Mass. 343, 350-351 (1926). Because the shape of the coastline typically changes as a result of the accretions, applying the rule of "equitable division" means that one cannot simply extend existing sidelines in a straight line from their intersection with the old waterline to intersect with the new waterline. Instead, as the plans the plaintiffs submitted in the case before us well illustrate, the existing sidelines would have to be extended at a pronounced angle. The Land Court has developed surveying protocols on how to draw such boundaries with respect to registered land. See Land Court Manual of Instructions, supra, at §§ 1.5, 2.1.2, 2.1.4.5, 2.3, 3.2.2. See also Lorusso, supra at 781 (recognizing that rule of "equitable division" of accreted lands can be informed by "a positive prescribed rule" [quotation omitted]).

the Torrens System, An Essay, in The Torrens System of Registration and Transfer of the Title to Real Estate at 92-93 ("To give [a parcel] . . . an immediate effect [of registration] would be to cut off vested rights in a manner to which the possessor has not given his consent").  In other words, it is the S-petition proceeding that will establish the plaintiffs' rights on the ground as to particular portions of such land.  The majority, like the Land Court judge, conflates the question of title with that of registration.  Because the essence of land registration is that property identified with geographical particularity has been subjected to an in rem proceeding, then, by definition, land can become registered land only if it has been subjected to such a proceeding.[7]

Applying that definitional principle to the facts of this case is straightforward.  It is undisputed that the current beach area was not owned by the plaintiffs' predecessors-in-title at the time of the original registration proceedings.

---

[7] The majority acknowledges that each plaintiff's specific portion of the beach area will be established through the current registration proceeding.  It necessarily follows that each plaintiff's portion cannot be considered as having already become registered land with respect to the other plaintiffs and abutters.  The majority nevertheless contends that the beach area still can be considered registered land with respect to the interveners.  This ignores the fact that registration is an in rem proceeding that determines the rights of the world to a particular tract of land.  The idea that land can be registered with respect to some parties, but not to others, is insupportable.

Instead, such land at that time indisputably was submerged land owned by the Commonwealth.  As a result, the beach area was not part of the original registration proceedings, and cannot be said to be encompassed within the original certificates of title.  Nor, up until now, have there been any supplemental registration proceedings adjudicating ownership of the beach area.  The plaintiffs brought the current action to accomplish that very end:  to amend their certificates of title to establish their title to a share of the accreted land and the boundaries thereto.  Only at the point the beach area has been brought into the registered land system will it be subject to the protections enjoyed by registered property, including protection against the accrual of prescriptive rights pursuant to G. L. c. 185, § 53.  See Batchelder v. Planning Bd. of Yarmouth, 31 Mass. App. Ct. 104, 108 (1991) (state of title does not change until registration proceeding is complete).

On what basis, then, does the majority purport to treat the beach area as having become registered without its having been subjected to the registration process?  In short, the majority appears to accept the judge's assessment that it would be unfair and unwise to require owners of littoral land to pursue S-petitions if they wanted any accreted land to be registered. In the words of the Land Court judge:

"To hold that accreted land could not automatically become registered would create a heavy burden on littoral owners.  Property owners would not only need to closely monitor their changing water lines but would also have to bear the cost of having to update their certificates of title regularly.  Failure to periodically update their registration would create the constant need to protect their property line from being claimed by outside parties, despite its initial registration.  This is contrary to the purpose of the registration system, to make titles certain and indefeasible . . . and would make the registration of littoral properties less meaningful than the registration of landlocked parcels [quotation omitted]."

There are numerous problems with such reasoning.  First, it is not self-evident what unfairness lies in requiring owners of registered littoral land to file an S-petition if they want their portion of any accreted land to be brought within the registration system and reflected on their certificate of title.  In addition, contrary to the judge's suggestion that frequent S-petitions would need to be filed, an owner of littoral land subject to accretion could seek full protection from any claims of prescription by updating the certificate of title at twenty-year intervals (the time period necessary for any claim for a prescriptive easement to accrue).[8]  Requiring such owners to initiate an S-petition in this manner in order to obtain the full benefits of the registered land system for new accretions hardly seems unfair.  Indeed, it simply treats such owners the

---

[8] See G. L. c. 187, § 2 ("No person shall acquire by adverse use or enjoyment a right or privilege of way or other easement from, in, upon or over the land of another, unless such use or enjoyment is continued uninterruptedly for twenty years").

same as all other owners of recorded (that is, nonregistered) accreted land.[9]

Moreover, the reasoning of the judge, endorsed by the majority, rests on a logical fallacy: we should treat land as registered, even though it is not, because doing so would serve the goals of the registration system (increased certainty). In addition, allowing "automatic registration" of land that is accreting actually decreases certainty. As noted, one of the central attributes of the land registration system is that one

___

[9] Because owners of registered littoral land would need to update their certificates of registration periodically in order to take full advantage of the registered land system, there is perhaps some truth to the judge's characterization that this "would make the registration of littoral properties less meaningful than the registration of landlocked parcels." But that result is simply the product of the mutable nature of littoral land and the landowners' good fortune that their land is expanding.

Of course, as oft has been observed, owners of littoral land also can lose their property to the sea, e.g., through erosion. That coastal boundaries are subject to the whims of the sea in both directions presents an equitable reason underlying the common law principle that title to littoral land generally moves with the waterline. See White v. Hartigan, 464 Mass. at 407 (recognizing "the equitable principle that a property owner who enjoys the benefit of an increase in property when waterlines shift seaward ought also to bear the burden of a decrease in property when waterlines shift landward"). However, such considerations have nothing to do with the separate question whether any accreted land automatically should be considered registered as it is formed. The Land Court judge's reasoning that "allowing the automatic registration of accretions provides a balance to the burden faced by owners of registered littoral property" again conflates title with registration.

can determine the existence and geographical extent of registered land from mere examination of the certificate of title and its corresponding plan on file with the Land Court. Automatic registration of accreted land is at odds with such certainty, because the boundaries of the land reflected on the certificate of title and corresponding plan will be inconsistent with conditions on the ground (to the extent of any accreted lands that have not yet been the subject of an S-petition).[10] And, as observed above, the determination of boundaries of accreted land is not without some difficulty, subtlety, and uncertainty.  See note 6, supra.

The Land Court judge's additional suggestion that automatic registration is needed to "preserve the water-abutting nature of littoral property" is, at a minimum, overstated.  Given the nature of littoral land, any claim of a prescriptive easement will be extremely difficult to prove (and a successful claim of

---

[10] Of course, had the interveners examined the plaintiffs' existing certificates of title, they could have determined that the plaintiffs' property extended to the sea and therefore would have known that the beach area was not theirs.  But this is doubly irrelevant.  First, the interveners presumably could have determined that the plaintiffs owned to the sea regardless of whether any of their parcels had been registered.  Second, a claim for a prescriptive easement turns on the nature and duration of the trespasser's use, not the state of his knowledge of who owns the underlying fee.  See White v. Hartigan, 464 Mass. at 416-419 (discussing elements of prescriptive easement claim over eroded land).

actual adverse possession even harder).[11]  In any event, going forward, owners of registered littoral land, just like owners of recorded littoral land, have many means available to prevent such claims from accruing.  Those means include what the plaintiffs did here:  petitioning to have the accreted land made part of the registered land system.

None of this is to suggest that the Legislature would lack the power to favor the interests of the owners of registered littoral land over those of others in the manner that the plaintiffs desire (and the majority has endorsed).  However, nothing in the language or structure of the registration statute suggests that the Legislature has made such a policy choice.[12]  Until it does, we are instructed not to read into that act provisions that are not there.  Hickey v. Pathway Assn., 472 Mass. 735, 755 (2015) (except as expressly provided by land

---

[11] Counsel for the parties, both experienced Land Court practitioners, were unaware of any other registration case since 1989 that raised the subject matter of the current case (the intersection of the law of registered land and the law of accretion).  Independent research has not uncovered any.

[12] Of course, many different potential policy choices are available with respect to how accreted land should be treated in a Torrens system.  In the only example of which I am aware that a State has addressed the issue by statute, one who petitions for registration of accreted land bears the burden of proving "that the accretion has been in existence for at least twenty years."  See In re Bernard Rudolph Banning to Register & Confirm Title to Land Situate in the Dist. of Koolaupoko, 73 Haw. 297, 302 (1992), quoting from HRS § 501-33.

registration act, "registered land is to be treated in the same manner, and according to the same legal doctrines, that apply to recorded land").  See Williams Bros., Inc. of Marshfield v. Peck, 81 Mass. App. Ct. 682, 686 (2012) ("Absent specific language, we will not presume legislative intent and will not read the [registration] statute to override the common law").  See also G. L. c. 185, § 77 (the act does not "change or affect in any way any other rights or liabilities created by law and applicable to unregistered land").[13]

In sum, by definition, land cannot become registered until it has been the subject of an in rem registration proceeding.  The majority's holding that the beach area here became immunized from any claims of prescriptive easements decades before it was the subject of such a proceeding is, in my view, untenable.  I therefore respectfully dissent.

---

[13] I agree with the majority's final point that the interveners' claims are not aided by any efforts to invoke the rights of the public.  However, their claim that the beach area is not currently registered land is in no way dependent on such efforts.